UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SNEAKERS OUTLET, LLC

CIVIL ACTION

VERSUS

NO: 18-9163

WESTERN WORLD INSURANCE
COMPANY

SECTION: "J" (1)

## ORDER AND REASONS

Before the Court is a *Motion to Dismiss, or alternatively, Motion for Summary Judgment* **(Rec. Doc. 7)**, filed by the Defendant, Western World Insurance Company. The motion is opposed **(Rec. Doc. 8)** by the Plaintiff, Sneakers Outlet, LLC.[1] Defendant replied **(Rec. Doc. 13)**. Two days after the motion was fully briefed, Plaintiff filed a *Motion for Voluntary Dismissal* **(Rec. Doc. 15)**, which Defendant opposes **(Rec. Doc. 16)**. Considering the motions, the memoranda, the record, and the law, the Court finds the Defendant's motion should be **GRANTED**, and the Plaintiff's motion should be **DENIED**.

## FACTS AND PROCEDURAL HISTORY

This dispute is between insurer and insured. Western World issued a general liability policy (the "Policy") to Sneakers Outlet, a shoe retailer, for the 1-year period beginning on November 19, 2016.[2] On or around April 11, 2017, Sneakers Outlet's

---

[1] Plaintiff refers to itself both as "Sneakers Outlet, LLC" and "Sneaker Outlet, LLC." The Court uses the pluralized version of the Plaintiff's name, the same way it appears in the caption of the Plaintiff's complaint.
[2] (Rec. Doc. 7-4 at 6).

1

glass front door was smashed, and inventory and surveillance equipment—which presumably recorded the break-in—were taken from the premises.[3] Plaintiff alleges the break-in was discovered at 9:00 a.m., when Malek Jabar arrived for work. Malek is the son of the owner, Khir Jabar. It unclear when the police were called, but the sheriff's deputy did not arrive at the scene until 3:10 p.m.[4] The report written by the on-scene officer notes the following:

> WHILE ON SCENE, [Khir] JABAR ADVISED ME THAT THE SHATTERED GLASS FROM THE ENTRY / EXIT DOOR WAS CLEANED UP BY HIS SON/WITNESS, MALEK JABAR AND THE STORE MERCHANDISE WAS NOT SEARCHED THROUGH. I OBSERVED THE FRONT DOOR WITHOUT A GLASS AND THERE WAS NO SHATTERED GLASS ON THE GROUND NEXT TO THE POINT OF ENTRY DOOR. THE STORE MERCHANDISE WAS NOT IN DISARAY [sic]. THE CONNECTING WIRES WERE HANGING FROM THE WALL WHERE THE VIDEO RECORDER WAS REMOVED FROM.
>
> THE OWNER JABAR REFUSED CRIME SCENE [5]

Sneakers Outlet gave Western World notice of the alleged break-in two weeks later, on April 25, 2017. On May 3, 2017, Western World assigned investigation of the loss to Team One Adjusting Services, LLC.[6] A couple of days later, on May 5, 2017, an investigator with Team One interviewed Khir Jabar.

The investigator's report makes several observations that would later cause Western World to doubt the legitimacy of Sneakers Outlet's claim. First, although the store has a fully functional alarm system, the alarm did not sound at the time of the

---

[3] (Rec. Doc. 1).
[4] (Rec. Doc. 7-6 at 27).
[5] (Rec. Doc. 7-6 at 29).
[6] (Rec. Doc. 7-6 at 1).

2

alleged break-in.[7] Previously, when someone had tried to break into the store the alarm had sounded, and nothing was stolen. Second, the investigator's report also documents a "discrepancy" between Mr. Jabar's statements and the sheriff's deputy's report. Mr. Jabar told the investigator that the crime scene was fingerprinted; the police report indicates, "Jabar refused crime scene."[8] Additionally, Mr. Jabar provided the investigator with an itemized list of the inventory lost, calculated from invoices issued by a local The Athlete's Foot, which evidently supplies Sneakers Outlet with inventory.[9] The invoices used to calculate Sneakers Outlet's losses appear to be incomplete and are partially inaccurate. They list no invoice numbers, shipping dates or methods of shipping, and there are no signatures on them indicating they were ever authorized. Sneakers Outlet's street address is also misspelled on the forms. Sneakers Outlet did not provide any other evidence that it had received the shoes listed on the invoices or that it had paid for them.

Team One submitted its report to Western World on May 15, 2017. Based on the evidence collected in Team One's report, Western World determined it needed to investigate further, through record requests and an examination of the insured under oath. This was Western World's right as a matter of contract. The Policy requires Sneakers Outlet to "[c]ooperate with [Western World] in the investigation or settlement of the claim."[10] Additionally, the Policy empowers Western World to:

---

[7] (Rec. Doc. 7-6 at 2).
[8] (Rec. Doc. 7-6 at 2).
[9] (Rec. Doc. 7-6 at 35-42). In an affidavit, Western World's forensic account, Michael Magner, avers that the respective owners of Sneakers Outlet and The Athlete's Foot that apparently issued the invoices share a last name and may be related. (Rec. Doc. 16-3 at 3).
[10] (Rec. Doc. 7-4 at 21).

> [E]xamine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.[11]

The Policy explains that the consequences of an insured's failure to meet its obligations under the Policy elsewhere in the contract: "No one may bring a legal action against [Western World] under this Coverage Part unless . . . there has been full compliance with all the terms of this Coverage Part."[12]

On June 1, 2017, Western World sent Khir Jabar a letter demanding he make himself available for an examination and that he produce certain records on June 12, 2017.[13] The day of the examination, Mr. Jabar called Western World's counsel to inform them he could not appear at the examination because he had to take his daughter to the doctor. The examination was rescheduled for June 14. Mr. Jabar then obtained counsel, Kirk Dorsey, who informed Western World that he needed time to familiarize himself with the case and that the examination would need to be postponed. According to Western World, Mr. Dorsey agreed to try to provide the requested documentation.[14]

On June 28, 2017, Western World's counsel wrote Plaintiff's counsel to request a new date for the examination and again demanded the requested documentation be handed over. On June 29, 2017, Sneakers Outlet's counsel refused examination or

---

[11] (Rec. Doc. 7-4 at 21).
[12] (Rec. Doc. 7-4 at 36).
[13] (Rec. Doc. 7-7 at 1). Among the requested documents are sales tax reports, income tax returns, physical inventory counts after the break-in, and bank statements.
[14] (Rec. Doc. 7-9).

4

production of documents, claiming the documents would be provided in the due course of discovery because litigation was imminent.[15] On July 11, 2017, Western World's counsel sent another letter, again asserting its right to conduct an examination under oath pursuant to the Policy.[16] Sneakers Outlet did not respond. On February 9, 2018, Western World sent yet another letter requesting examination of Mr. Jabar and the requested documentation. Again, Sneakers Outlet did not respond.

On October 3, 2018, Sneakers Outlet filed its complaint against Western World.[17] Western World filed its motion to dismiss on November 23, 2018. Sneakers Outlet filed its motion for voluntary dismissal on January 16, 2019.

## **STANDARD OF LAW**

Defendant asks this case be dismissed with prejudice pursuant to Rule 12(b(6) and, alternatively, for summary judgment pursuant to Rule 56. According to the Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (internal citations omitted). The allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). "Under Rule 12(b)(6), a claim may be dismissed when a plaintiff fails to allege any set of facts in support of his claim which would entitle him to relief." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (citing *McConathy v. Dr.*

---

[15] (Rec. Doc. 7-11).
[16] (Rec. Doc. 7-12).
[17] (Rec. Doc. 1).

*Pepper/Seven Up Corp.*, 131 F.3d 558, 561 (5th Cir. 1998)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Rule 12(d) specifies that, if matters outside of the pleadings are presented and not excluded by the court on a Rule 12(b)(6) motion, the motion must be treated as a motion for summary judgment. Although not all evidence is subject to this rule, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007), most of what Western World has introduced into the record constitutes summary judgment evidence. For example, the Court could not consider Team One's investigative report without converting the motion to one for summary judgment. "[C]onversion by the district judge should be exercised with great caution and attention to the parties' procedural rights," 5C C. Wright & A. Miller, *Fed. Prac. & Proc. Civ.* § 1366 (3d ed. 2019 supp.), but the parties were prepared for conversion in this case because the defendant's motion invites this Court to apply the Rule 56 standard and Sneakers Outlet counters that there are issues of material fact. *See Isquith v. Middle S. Utilities, Inc.*, 847 F.2d 186, 195 (5th Cir. 1988) (finding that procedural safeguards of Rule 56 require notice to party that the court *could* rule pursuant Rule 56, not that it *would*). The choice of whether to exclude extra-pleading material or consider it under a Rule 56 standard is within the discretion of the district court. *Id.* Accordingly, the Court converts Western World's motion to one for summary judgment.

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)), *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325, *Little*, 37 F.3d at 1075.

## **DISCUSSION**

Defendant argues that the Plaintiff has materially breached its contract by not submitting to an examination under oath. Plaintiff counters that it provided sufficient proof of loss to Defendant and instead of Western World paying the claim as it was required to do by law, Western World started an investigation in bad faith on the basis of entirely equivocal evidence. Essentially, Sneakers Outlet argues that Western World did not need to conduct an examination and the case should proceed because there is a material issue of fact as to whether the Sneakers' Outlet's proof of loss was adequate. Alternatively, the Court should dismiss without prejudice to allow the examination to go forward and cure Western World's prejudice.

Besides its claim that Western World breached the Policy by not paying upon proof of loss, Sneakers Outlet makes no argument that it is not in breach of contract. The Policy is a contract like any other, subject to the general canons of construction set forth in the civil code. *Succession of Fannaly v. Lafayette Ins. Co.*, 805 So.2d 1134,

1137 (La. 2002). "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046. Here, the Policy states unambiguously that Sneakers Outlet shall "[c]ooperate with [Western World] in the investigation or settlement of the claim," and if it does not comply with this provision, Sneakers Outlet may not "bring a legal action against [Western World]."[18] Furthermore, it is undisputed that the Policy gives a right to Western World to examine the insured under oath and request the insured's books and records.[19]

The cooperation clause in the Policy does not seem different from a cooperation clause found in any run-of-the-mill insurance policy. These clauses "fulfill the reasonable purpose of enabling the insurer to obtain relevant information concerning the loss while the information is fresh." *Hamilton v. State Farm Fire & Cas. Ins. Co.*, 477 Fed. Appx. 162, 165 (5th Cir. 2012) (per curiam) (unpublished) (quoting *Holden v. Connex–Metalna Mgmt. Consulting*, No. Civ. A.98–3326, 2000 WL 1741839, at *2 (E.D. La. Nov. 22, 2000)). Cooperation clauses have the same force in Louisiana as they do in other jurisdictions: compliance is "a condition precedent to recovery." *Lee v. United Fire & Cas. Co.*, 607 So. 2d 685, 688 (La. App. 4th Cir. 1992). Thus, the insured may be in material breach of contract and be prevented from recovering under its policy if it does not cooperate by refusing to produce documents or submit to an examination under oath. *Id.* "An outright refusal to submit to an examination is the easy case." *Id.*

---

[18] (Rec. Doc. 7-4 at 21, 36).
[19] (Rec. Doc. 7-4 at 21).

9

"The purpose of the oral examination of the insured is to protect the insurer against fraud, by permitting it to probe into the circumstances of the loss, including an examination of the insured." *Hamilton*, 477 Fed. Appx. 162, 165 (quoting *Mosadegh v. State Farm Fire and Cas. Co.*, No. CIV.A. 07–4427, 2008 WL 4544361, at *3 (E.D. La. Oct. 8, 2008)). In accordance with this purpose, the U.S. Court of Appeals for the Fifth Circuit has sometimes required the defendant to show actual prejudice resulting from the insured's non-cooperation. *See, e.g., id. But see Hayes v. S. Fid. Ins. Co.*, No. CIV.A. 13-4824, 2013 WL 4012745, at *3 (E.D. La. Aug. 2, 2013) (recognizing federal courts have at other times declined to answer whether Louisiana law requires a showing of actual prejudice). This actual prejudice requirement has been enforced in numerous cases where an insured has at least demonstrated a timely willingness to cooperate. *See, e.g.*, Hayes, 2013 WL 4012745, at *5 (declining summary judgment where insured missed a scheduled examination because of an alleged lack of notice and agreed to an examination three months after the missed appointment), *Marquette v. S. Fid. Ins. Co.*, No. CIV.A. 14-2311, 2015 WL 94712, at *2 (E.D. La. Jan. 7, 2015) (declining summary judgment where insurer did not request examination until a week after the insured had filed suit).

The timeline of this case stands in sharp contrast to those proceedings. Here, Plaintiff suffered the break-in on April 11, 2017, but did not notify the insurer until two weeks later. The insurer dispatched an investigator to the scene the following week. The investigator then filed his report on May 15, 2017, noting therein that Sneakers Outlet's owner gave statements that conflicted with the police report and

that the invoices provided as proof of loss were incomplete. On June 1, less than 40 days after the insurer was first notified of the break-in, Western World asked for financial documents and an examination of the store's owner pursuant to the Policy. Mr. Jabar, the owner, delayed the examination, obtained counsel and then repeatedly declined through counsel to give his insurer any other documentation or submit to an examination. Despite multiple warnings by Western World that Sneakers Outlet was in breach of contract, Sneakers Outlet filed suit on October 3, 2018. On January 16, 2019, after the Defendant's motion to dismiss for breach of contract had been fully briefed, Plaintiff moved for dismissal without prejudice, so that an examination could take place, which Plaintiff says will cure any prejudice.

This argument, that impediment of an investigation is no prejudice to the insurer as long as the investigation is allowed to proceed at some later point, has been rejected by our Court of Appeals. "The underlying purpose of a cooperation clause is to allow the insurer to obtain the material information it needs from the insured to adequately investigate a claim of loss *prior to the commencement of litigation proceedings.*" *Hamilton*, 477 Fed. Appx., at 166 (emphasis added). It is the delay of the insurer's investigation that is the source of the prejudice. Memories fade, records are lost or are thrown away. Cooperation clauses are inserted into policies specifically to allow insurers to investigate while the evidence is "fresh." *Mosadegh*, 2008 WL 4544361, at *4.

Western World has submitted an affidavit from its forensic accountant explaining exactly why the requested documents and examination were necessary to

Western World's investigation. The bank statements, ledgers, and cancelled checks requested, "were necessary for us to analyze the inventory theft claim, including confirming the claimed stolen items were purchased and owned by Sneaker and the claimed inventory was on-hand at the time of the theft."[20] In *Kerr v. State Farm Fire & Casualty Co.*, the Fifth Circuit accepted investigators' affidavits explaining how a refused examination had impeded the insurer's investigation as ample evidence of prejudice to the defendant insurance company. 511 Fed. Appx. at 307. The same has been provided in this case. Consequently, when Sneakers Outlet refused multiple times to comply with Western World's reasonable requests, Sneakers Outlet prejudiced Western World's investigation by failing to comply with the cooperation clause. *Id.*, *Hamilton*, 477 Fed. Appx. at 166.

Plaintiff suggests that there is a material issue of fact as to whether Western World had sufficient proof of loss to pay Plaintiff's claim before requesting additional documentation and an examination. This is a suggestion that the Policy contemplates some sort of burden shifting framework, whereby if the Plaintiff gives what he believes is a sufficient proof of claim, then the insurer cannot exercise its rights to request documents or an examination of the insured. Plaintiff points to no language in the Policy and provides no legal authority suggesting that Plaintiff had a right to refuse cooperation because it believed that it had already given sufficient proof of claim. The Court does note that the examinations may be requested "at such times as may be reasonably required," but it is obvious under these circumstances that

---

[20] (Rec. Doc. 16-3 at 3).

Western World acted reasonably in promptly asking for an examination. As Western World's accountant explains, additional evidence was necessary for Western World to even conclude that the allegedly stolen merchandise was purchased, shipped, and on-hand at the time of the alleged robbery. Apart from a right to protect itself from fraud, Western World obviously had a right to accurately determine what property was lost or stolen.

Dismissing without prejudice is not an option in this case. Plaintiff makes no attempt to explain how dismissing this litigation now and allowing an examination to be conducted over two years after the break-in would cure Western World's prejudice. Even more egregious is the fact that Sneakers Outlet has yet to provide any reasonable explanation for its lack of cooperation in this case. Summary judgment is appropriate. *See Mosadegh*, 2008 WL 4544361, at *5.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the *Motion for Summary Judgment* **(Rec. Doc. 7)** is **GRANTED**; the Plaintiff's claims are dismissed.

**IT IS FURTHER ORDERED** that the *Motion for Voluntary Dismissal* **(Rec. Doc. 15)** is **DENIED**.

New Orleans, Louisiana, this 30th day of April, 2019.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE